

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8283 | **DATE** | 8/5/2002 |
| **CASE TITLE** | | Raub vs. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter memorandum opinion and order an plaintiff's motion for summary judgment or remand. Plaintiff's motion for summary judgment [19-1] is granted in so far as it requests a remand of the ALJ's decision and denies the Commissioner's cross-motion for summary judgment [22-1]. The cause is hereby remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P. terminating case.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | AUG 0 5 2002 | |
| ✓ | Docketing to mail notices. | | | date docketed | |
| ✓ | Mail AO 450 form. | | | | 27 |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | |
| | | | U.S. DISTRICT COURT CLERK | date mailed notice | |
| mm | courtroom deputy's initials | | 02 AUG -2 PM 2: 49   Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

AUG 0 5 2002

| | | |
|---|---|---|
| THOMAS L. RAUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 01 C 8283 |
| | ) | |
| JO ANNE B. BARNHART, | ) | Magistrate Judge Ian H. Levin |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Raub ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA") denying his application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") under the Social Security Act (the "Act"). Before the Court are the parties cross-motions for summary judgment in the cause. For the reasons set forth below, the Court remands the cause for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On July 29, 1998, Plaintiff applied for DIB and SSI alleging that he became disabled to work as of May 15, 1996, due to disabling conditions.[1] (R. 127-29; *see* R. 16, 25.) Plaintiff's initial application for benefits was denied, and subsequently, upon review, Plaintiff's request for reconsideration was also denied. (R. 92-103.) Plaintiff then filed a request for an administrative

_____

[1]References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

hearing (R. 104-06), and on July 28, 1998, Plaintiff appeared with counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). (R. 35-91.) A Vocational Expert ("VE") and Medical Expert ("ME") were also present and testified at the hearing. (R. 35-91.)

On August 22, 2000, the ALJ issued his decision finding that Plaintiff was not disabled because he had the residual functional capacity ("RFC") to perform a reduced range of medium unskilled work for which a significant number of jobs in the national economy existed. (R. 25.) Plaintiff filed a request for review of the ALJ's decision, and on September 28, 2001, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (R. 6-7.) Pursuant to 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## BACKGROUND FACTS

### I.    PLAINTIFF'S BACKGROUND/TESTIMONY

Plaintiff was born on February 2, 1951, and was 48 years old at the time of the administrative hearing. (R. 48.)  He was a high school graduate and lived with his two brothers. (R. 43.)

Plaintiff worked as a laborer, machine operator and tool grinder for the same company from 1971 through 1990. (R. 42, 43, 149.)  In 1991, Plaintiff worked as a security guard for several months. (R. 46.)  Plaintiff also worked as a laborer and inspector until May 1996. (R. 46-47, 149, 151.)  Furthermore, Plaintiff sought work through a temporary employment agency, but he was not working at the time of the hearing. (R. 16, 44-46, 48, 137, 180.)

Plaintiff testified that he was unable to work due to agoraphobia[2] and a panic disorder. (R.

---

[2]Agoraphobia is an anxiety about being in places or situations from which escape might be difficult or embarrassing or in which help might not be available in the event of a panic attack. *Diagnostic and Statistical Manual of Mental Disorders* at 396 (4th ed. 1994) (DSM - IV). This

56, 59.) He stated that his agoraphobia caused him to be very anxious when going to work; such that, his anxiety would bring on panic attacks. (R. 59-60.) Plaintiff was able to leave his house, but had begun experiencing greater fear than he had in the past. (R. 63-64.)

Plaintiff testified that he had a panic disorder since he was 17 or 18 years old. (R. 78.) He described his panic attacks as a sudden fear, which came on very quickly and caused him to sweat, shake, have choking sensations, and not be able to breathe. (R. 52.) Plaintiff also felt trapped, dizzy, faint, experienced hot and cold flashes, had heart palpitations and numbness in his legs during a panic attack. (R. 52, 60.) He stated, however, that after the panic attack was over, things "pretty much go back to normal." (R. 60.) Plaintiff testified that he had panic attacks about three times a week, sometimes more often, depending on his stress level. (R. 60.)

Plaintiff stated that he had experienced panic attacks at work. He testified that he occasionally had panic attacks in 1991 when he was working as a security guard. (R. 52.) Plaintiff also stated that he had a panic attack in May 1999 while cleaning tables in a small cafeteria as part of a janitorial job. (R. 44, 50-52.) Consequently, that job lasted only the one day. (R. 44, 50-52.) Plaintiff further stated that when he experienced a panic attack at work, he would go to the restroom until the attack subsided. (R. 60-61.) However, often he could not leave his work area. (R. 60-61.) He further testified that he experience panic attacks on an unpredictable basis even though he took

condition typically leads to a pervasive avoidance of various situations; such as, being alone outside the home, being in a crowd of people, or traveling in an automobile, bus or airplane. *Id.* Some individuals with agoraphobia can expose themselves to the feared situation, but experience considerable dread while in the situation. *Id.* Individuals with agoraphobia are often better able to confront a feared situation when accompanied by a companion. *Id.* Agoraphobia can impair individuals in their ability to do things such as travel to work or carry out tasks. *Id.* Agoraphobia sometimes, but not always, occurs with panic disorders. *Id.*

3

medication to control the attacks. (R. 63-64.)

Plaintiff testified that he has very limited hearing in his right ear as well as some hearing loss in his left ear. (R. 57-58; *see* R. 232.) Previously, Plaintiff had a hearing aid, but he did not one have one at the time of the hearing because he had lost it. (R. R. 57-58; *see* R. 232.) Plaintiff's hearing loss rendered him incapable of jobs requiring good hearing or concentrated exposure to hazards. (R. 22, 222.)

## II. MEDICAL EVIDENCE

### A. Treating Physicians

Dr. Elsy A. Devassy, M.D. (psychiatrist) treated Plaintiff from 1991 through the time of the administrative hearing. Pl.'s Mem. at 4; (R. 198.) Plaintiff saw Dr. Devassy every three to four months. (R. 72-73, 198.) Dr. Devassy diagnosed Plaintiff as having a panic disorder and depression. (R. 200, 224.) She reported that Plaintiff would become anxious and nervous, experienced depression and difficulty concentrating, and had panic attacks. (R. 198.) Dr. Devassy reported normal clinical findings and that Plaintiff could perform some simple activities of daily living. (R. 198-200, 224.) She noted, however, that Plaintiff had limited social interaction. (R. 224.) Dr. Devassy further reported that Plaintiff gets "extremely nervous and panicky which interferes with his concentration under the demands of [his] job situation." (R. 200.)

In a report to the SSA, Dr. Devassy indicated that Plaintiff had experienced panic attacks for many years and had been taking medication for several years. Pl.'s Mem. at 4. Dr. Devassy further reported that Plaintiff continued to complain of having panic attacks particularly when he was around other people, but sometimes even when he was alone. (R. 223.) In fact, Plaintiff reported to Dr. Devassy that he was having three or four panic attacks every two or three weeks. (R. 223.)

4

Dr. Devassy's treatment notes, beginning in May 1996, reflect that Plaintiff was doing "relatively well" at times. (R. 238-41.) The treatment records indicated that Plaintiff was taking medication; specifically, Valium and Tofranil; however, he was still experiencing some anxiety attacks. (*See e.g.* R. 241.) In November 1996, Plaintiff complained that he was having more anxiety attacks. (R. 239-40.) At that time, Plaintiff was not working because his employer had moved out of the state. (R. 239-40.) Improvements were noted in Plaintiff's condition after his medication was switched to Tofranil. (R. 239-40.) In August 1996, Plaintiff reported some anxiety attacks, but treatment notes reflect that they were "not incapacitating him." (R. 241.) As of January 1997, Plaintiff had less anxiety, but he was experiencing some depression. (R. 239.) In November 1997, Plaintiff told Dr. Devassy that he was having panic attacks ten to twelve times a month, mostly when he was around other people. (R. 238.) Plaintiff continued to take medication for his condition. (R. 238.) Furthermore, in February 1998, Dr. Devassy noted that Plaintiff was having continued panic attacks and continued Plaintiff's medications. (R. 238.)

As of June 1998, Plaintiff reported to Dr. Devassy that he was experiencing occasional panic attacks. (R. 237.) At that time, Plaintiff was taking Valium and Tofranil. (R. 237.) In March 1999, after Plaintiff ran out of his medication, he began experiencing panic attacks. (R. 237.) Plaintiff's medicine was then continued. (R. 237.) However, when Plaintiff returned to Dr. Devassy in July 1999, she noted that he continued to have about three panic attacks a week; however, the attacks were not as severe as they had previously been. (R. 237.)

Plaintiff also told Dr. Devassy that he drank four to five beers at one time, once or twice a week, and indicated that he had not received treatment for this condition. (R. 223.) Dr. Devassy further indicated that Plaintiff has a Global Assessment of Functioning (GAF) score of 65-70

indicating mild symptoms.[3] (R. 224.)

Dr. C. Loranzo, M.D. (psychiatrist) treated Plaintiff from April 1998 through January 1999. (R. 226-28.) In January 1999, Dr. Loranzo completed a psychiatric report of Plaintiff for the SSA. (R. 226-28.) Dr. Loranzo reported that Plaintiff could care for himself on a limited basis and received assistance from his brothers, with whom he lived. (R. 226.) While Dr. Loranzo noted normal clinical findings, he also observed that Plaintiff did not report pleasurable interests, isolated himself from others, was depressed and his thought processes were marked by anxiety.[4] (R. 226-28.) Dr. Loranzo diagnosed agoraphobia and panic disorder. (R. 226-28.) Dr. Loranzo assessed Plaintiff's GAF at 60 (R. 255, 260), a score indicating moderate difficulty in social or occupational functioning. *DSM-IV* at 32. (R. 226.)

Dr. Loranzo prescribed Zoloft for Plaintiff. (R. 254.) As of April 1998, Plaintiff reported to Dr. Loranzo that he was having between three to five panic attacks a week. (R. 256.) The most recent attack occurred, at a grocery store, the day before his appointment with Dr. Loranzo. (R. 256.) Plaintiff told Dr. Loranzo that his attacks generally lasted five minutes; however, his longest attack lasted about fifteen minutes. (R. 60.) Dr. Loranzo concluded that Plaintiff could not work due to his panic disorder and reduced ability to function appropriately in a place of employment. (R. 228.)

**B.    State Reviewing Physicians**

On October 28, 1998, Dr. Jerrold Heinrich, Ph.D., a state agency psychologist reviewed the

---

[3]GAF measures an individual's overall level of psychological, social, and occupational functioning. *See Diagnostic and Statistical Manual of Mental Disorders Text Revision* 34 (4th ed. 2000)(hereinafter DSM-IV-TR). A GAF score in the range of 65 to 70 generally indicates an individual with mild symptoms who has some difficulty in social, occupational or school functioning. *DSM-IV-TR* at 34.

[4]Plaintiff reported to Dr. Loranzo that he had made suicide attempts and was unable to function due to panic attacks.

6

medical evidence and concluded that Plaintiff had an anxiety disorder that produced slight limitations in his daily activities, moderate difficulties with social functioning, and often produced deficiencies of concentration, persistence, or pace. (R. 208.) Dr. Heinrich, however, found that there was insufficient evidence to determine whether Plaintiff's anxiety disorder produced episodes of deterioration or decompensation in work settings. (R. 208.) Dr. Heinrich found that Plaintiff's anxiety disorder would result in moderate limitations in his ability to work in close proximity to others; interact appropriately with the general public; get along with co-workers; and respond appropriately to changes in a work setting. (R. 210-11.) Dr. Heinrich concluded that Plaintiff could perform detailed work instructions, two to four tasks, but needed to work in a setting that had minimal interaction with others; he could not work in large groups; and he needed to work in a setting that did not involve frequent changes in routine. (R. 212.)

In February 1999, Dr. Kirk W. Boyenga, Ph.D., a state agency psychologist, reviewed the medical evidence and concurred in Dr. Heinrich's assessment of Plaintiff's condition. (R. 212.)

In March 1999, Dr. Stanley A. Burris, M.D., a state agency physician reviewed the medical evidence and concluded that Plaintiff had no exertional limitations, but should avoid jobs that required good hearing. (R. 215-222.)

In April 2000, Dr. William N. Hilger, Ph.D., a state agency psychologist, performed a post-hearing consultative psychological evaluation of Plaintiff. (R. 262-68.) Dr. Hilger reviewed the medical evidence and Plaintiff underwent additional testing which included the Minnesota Multiphasic Personality Inventory-II ("MMPI-II"). (R. 262-68.) At the time of the evaluation, Plaintiff reported that he had not held a steady job since 1996; but even before time, he had six to seven panic attacks per week, and sometimes two to three attacks on a daily basis. (R. 262.) Plaintiff

reported that he did not drive because he lost his driver's license in 1990 due to a DUI. (R. 263.)

Based on the MMPI-II test results, Dr. Hilger reported that Plaintiff "produced an extremely exaggerated and malingering type of profile in which he blatantly attempted to present himself as being extremely psychotic and far more emotionally and mentally disturbed and incapable than he might actually be." (R. 20, 267). Moreover, Plaintiff "clearly did not present a typical anxiety disorder profile which is seen in bona-fide agoraphobia and panic attack patients, but he attempted to make himself appear much more disturbed and incapable." (R. 267.) Dr. Hilger's impression of Plaintiff was that he was "very manipulative, deceptive and [an] unreliable individual who had minimized and denied his drinking for years." (R. 267.) Furthermore, Plaintiff "attempted to present himself as being emotionally disturbed and incapable of working due to an alleged anxiety disorder." (R. 267.)

Dr. Hilger diagnosed chronic alcoholism which was reportedly in remission, possible agoraphobia with panic attacks, and malingering and exaggeration of symptomatology. (R. 267.) Dr. Hilger noted that Plaintiff showed little motivation, but had "fair mental potential to pursue and maintain work-related activities;" however, he had no motivation to pursue and maintain gainful employment. (R. 267.)

**C.     Medical Examiner Testimony**

Dr. Marjorie S. Ardon, M.D., a board-certified psychiatrist, testified at the administrative hearing. (R. 69.) Dr. Ardon stated that Plaintiff did not have marked difficulties in any area of functioning. (R. 76.) She testified that Plaintiff had moderate restrictions in social functioning and concentration, persistence and pace, and had repeated episodes of deterioration or decompensation in work settings. (R. 77.) Dr. Ardon concluded that the evidence did not establish a mental

impairment that met or equaled any listed impairment. (R. 77.) Dr. Ardon noted inconsistencies between Plaintiff's testimony and Dr. Devassy's notes; such as, Plaintiff's alleged agoraphobia which his Dr. Devassy did not mention. (R. 77.) Dr. Ardon noted that Plaintiff listed the symptoms of panic disorder correctly, but questioned whether he was taking the correct medications for that impairment. (R. 78.) Dr. Ardon described the frequency of Plaintiff's panic attacks (i.e., two to three per week) as being "not much." (R. 79.)

In addition, based on a questionnaire the ALJ sent to Dr. Ardon after the hearing (for consideration of new evidence), she indicated that Dr. Devassy's records showed that Plaintiff's panic attacks responded well to medication and Dr. Lorenzo's records showed that he was responsive to Zoloft. (R. 260-61.) Furthermore, based on Dr. Devassy's July 13, 1999 progress note, Dr. Ardon regarded Plaintiff as being "limited briefly" with panic attacks. (R. 261.)

## III. VOCATIONAL EXPERT'S TESTIMONY

Mr. Lee Knutson, a VE, testified at the administrative hearing. Mr. Knutson was asked to assume a hypothetical person of Plaintiff's age, education, and past work experience who could not perform jobs that required good hearing, could only interact with others on a minimal basis, could not work in large group settings, should not work in a setting requiring frequent changes of routine, and could perform only two to four step tasks. (R. 83-84.) Mr. Knutson concluded that such a person could the following jobs: assembly worker (32,000) and security guard (5,000). (R. 84-85.)

The VE further testified that if Plaintiff's testimony was fully credited, his ability to work would be significantly impacted. (R. 85-88.) The VE stated that while a short panic attack might be overlooked, the type of condition that Plaintiff described regarding the frequency and unpredictable nature of his panic attacks would be disruptive and render an individual unable to

work. (R. 87-88.) Moreover, the VE testified that an individual would be unable to work even if the panic attacks did not cause him to miss an entire work day. (R. 85-88.)

## IV. THE ALJ'S FINDINGS AND DECISION HEREIN

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disabling condition. (R. 24.) The medical evidence establishes that Plaintiff has panic attacks and agoraphobia which significantly limits his ability to perform basic work activities, and therefore, they are severe. (R. 24.) In addition, the ALJ determined that alcohol abuse is not a material factor in the determination of Plaintiff's disability even though the record reflects a past history of alcohol abuse. (R. 24.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (R. 25.) Because the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to determine what he could do despite his limitations. (R. 25.) The ALJ determined that Plaintiff has the RFC to perform a reduced range of medium unskilled work. (R. 25.)

The ALJ determined that in view of Plaintiff's vocational characteristics and RFC, the Medical-Vocational Guidelines were not applicable. (R. 25.) The VE, however, identified jobs existing in significant numbers (i.e., assembly worker - 32,000 jobs and security guard - 5,000 jobs) in the national economy which Plaintiff could perform. (R. 25, 84-85.)

The ALJ further found that Plaintiff's allegations of disabling symptoms and limitations were not fully credible. (R. 25.)

Accordingly, the ALJ found that Plaintiff was not disabled under the terms of the Act. (R.

25.)

## **LEGAL STANDARDS**

### I.  **STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision is limited. The Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### II.  **STATUTORY AND REGULATORY FRAMEWORK**

To receive disability benefits, SSI and DIB claimants must be "disabled" as defined by the Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir.1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity

that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See Brewer*, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's RFC and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d at 1391.

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision finding that he is not disabled.

Upon review of the record, the Courts finds that an outright reversal is not warranted. Separately, as it relates to remand, Plaintiff alleges, *inter alia*, that the ALJ erred in rejecting his treating physicians' opinions as well as his own testimony regarding the frequency of his panic attacks. In rejecting his treating physicians' opinions, Plaintiff asserts that the ALJ failed to provide the basis for the weight he accorded the treating physicians' opinions as required by 20 C.F.R.§§ 404.1527(d)(2) and 416.1527(d)(2). In addition, plaintiff maintains the ALJ failed to follow the mandates of Social Security Ruling ("SSR") 96-7p in assessing Plaintiff's credibility. *See generally,* Pl.'s Mem. & Reply.

## I.    TREATING PHYSICIANS' OPINIONS

Plaintiff alleges that the ALJ erred in rejecting the opinions of his treating physicians, Drs. Devassy and Loranzo, regarding the frequency of his panic attacks. Pl.'s Mem. at 10-12. For instance, Drs. Devassy and Loranzo accepted Plaintiff's claims that he had panic attacks at least three times a week (R. 223, 237, 256) and submitted reports to the SSA indicating that Plaintiff's panic disorder would interfere with his ability to work. *Id.*; (R. 200, 228). Dr. Loranzo specifically stated that Plaintiff was unable to work as a result of his panic attacks and his inability to function appropriately in a work setting. *Id.* at 10-11; (R. 228). Moreover, Dr. Devassy reported that Plaintiff's condition interfered with his ability to concentrate under the demands of a job situation. *Id.* at 11 (R. 200).

Defendant, on the other hand, argues that the ALJ evaluated the record and reasonably concluded that Plaintiff had severe panic attacks and agoraphobia, but that they did not produce the

disabling limitations alleged by Plaintiff. Def.'s Mem. at 7. The ALJ acknowledged that Plaintiff's panic attacks produced work-related limitations, and he specifically limited Plaintiff from work involving more than minimal interaction with others; working with large groups of people; frequent changes in routine; and performing complex tasks (i.e., he could engage in simple, two to four step tasks.) (R. 23.) Moreover, the ALJ's RFC assessment reflected the limitations identified by the state agency physicians whose opinions the ALJ relied on. (R. 23, 212.)

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (*citing* 20 C.F.R. § 404.1527(d)(2); SSR 9-2p). Under the SSA's regulations, "Generally, . . . more weight [is given] to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). If, however, a medical opinion is not entitled to controlling weight, it is accorded deference and must be weighed using the factors set out in the regulations.[5] The ALJ

---

[5]The following factors are used in determining the weight given to a treating physician's opinion when it is not given controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight is given to that opinion); (4) consistency (the more consistent an opinion is with the record as a whole, the more weight it is given); (5) specialization (more weight is given to the opinion of a specialist about medical issues related to that source's specialty); and (6) other factors (those factors which tend to support or contradict an opinion). 20 C.F.R. §§ 404.1527(d)(2)(i)(ii); 404.1527(d)(3)-(6); 416.1527(d)(2)(i)(ii);

is required to give "good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion." *Id.*; *See also* SSR 96-2p.

The Court notes that the ALJ relied on the opinions of the state agency physicians who reviewed the record as well as Dr. Hilger, who performed a post-hearing consultative psychological evaluation, in reaching the conclusion that Plaintiff was not disabled. For instance, in his decision, the ALJ states that he "agree[d] with the Mental Residual Functional Capacity Assessment whereupon the State Agency doctors conclude that the claimant is mentally capable of following detailed instructions but needs a work setting with minimal interactions with others. . . " (R. 23.) Moreover, the ALJ found that while he had taken into consideration Dr. Hilger's report, he did not believe that Plaintiff was a malinger; however, "[He] may have [been] exaggerat[ing] when completing the MMPI-II." (R. 23.)

The ALJ, in his decision, however, does not provide an explanation or basis for either rejecting or discrediting the opinions of Plaintiff's treating physicians. Rather, the ALJ merely provides a summary of Drs. Devassy's and Loranzo's medical findings and does not articulate his reason(s) for according the two treating physicians' opinions lesser weight than that of the state agency physicians' opinions. The ALJ failed to provide any explanation with respect to the factors that are to be used in determining the weight given to a treating physician's opinion when it is not given controlling weight. 20 C.F.R. §§ 404.1527(d)(2)(i)(ii); 404.1527(d)(3)-(6); 416.1527(d)(2)(i)(ii); 416.1527(d)(3)-(6). The Court, therefore, finds that the ALJ made no attempt to explain why the treating physicians' opinions which favor Plaintiff are overcome by the opinions

---

416.1527(d)(3)-(6).

of the state agency physicians which the ALJ relied on.[6] Because the ALJ did not articulate the basis

for his decision in a manner sufficient to permit informed judicial review, the Court is required to

remand the cause for further development of the record in this area. *See e.g., Zurawski v. Halter*,

245 F.3d 881, 888 (7th Cir. 2001) (an ALJ must "articulate at some minimal level [his] analysis of

the evidence" to permit an informed review) (citation omitted).

## II.    CREDIBILITY DETERMINATION

Plaintiff argues that the ALJ failed to comply with SSR 96-7p because he did not sufficiently

articulate his reasons for finding Plaintiff's statements that he experienced panic attacks an average

of three to four times per week not credible. Pl.'s Mem. at 12-13. Alternatively, Plaintiff argues that

those reasons cited by the ALJ for disbelieving Plaintiff's allegations regarding the frequency of his

panic attacks are without merit. *Id.* For example, the ALJ finds that Plaintiff lacks credibility

because he did not have any panic attacks in his physicians' offices and did not seek emergency room

treatment or other medical care immediately after an attack, and the fact that Plaintiff could perform

certain daily activities. *Id.* at 13; R. 23. Defendant, however, asserts that the ALJ properly assessed

Plaintiff's credibility when he considered *inter alia* Plaintiff's lack of treatment for his purported

panic attacks, the inconsistencies in the record, and Plaintiff's daily activities. Def.'s Mem. at 11-12.

---

[6]The Court notes that Defendant attempts to supply possible reasons or justification for
why the ALJ may have discredited Drs. Devassy's and Loranzo's medical opinions. Def.'s Mem.
at 10-11. For example, Defendant asserts that Dr. Loranzo's opinion that Plaintiff is disabled
conflicts with Dr. Devassy's opinion and accordingly, it was not entitled to controlling weight.
*Id.* at 10. The Court, however, cannot consider Defendant's arguments because they were not
advanced by the ALJ. *See e.g., Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (". . .
[p]rinciples of administrative law require the ALJ to rationally articulate the grounds for her
decision and confine [a court's] review to the reasons supplied by the ALJ . . . That is why the
ALJ (not the Commissioner's lawyers) must "build an accurate and logical bridge from the
evidence to her conclusion.") (*citing Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

An ALJ's credibility findings will not be overturned by a court unless they are "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, a decision regarding a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski v. Halter,* 245 F.3d 881 (7th Cir. 2001) (*citing* SSR 96-7p). In this regard it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. *Id.* The ALJ must build an accurate and logical bridge from the evidence to the conclusion. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). Thus, the ALJ is required to state which of plaintiff's complaints he rejected and why such complaints were unsupported by the record. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). The ALJ must, therefore, minimally articulate his reasons for crediting or rejecting evidence of disability. *Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir. 1992).

The Court initially notes that in the body, not the Findings section, of the ALJ's decision, the ALJ states, "The objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. Consideration of the factors described in 20 C.F.R. §§ 404.1529(c)(3)/416.929(c)(3) and Social Security Ruling 96-7p leads to a *conclusion* that the claimant's allegations of disabling symptoms and limitations cannot be accepted." (R. 22.) (emphasis added.) Again in the body of his decision, the ALJ states, without explanation, that, "There are many inconsistencies throughout the record and the claimant lacks credibility." (R. 22.)

17

Critically, in his Findings, the ALJ states only that "The claimant's allegations of disabling limitations are not considered fully credible." (R. 25).

In these circumstances, the Court finds that the ALJ's conclusory statements regarding Plaintiff's credibility are insufficient as a matter of law because the Court is left to piece together the ALJ's sketchy assessment of Plaintiff's credibility. The Court is unable to follow path of the ALJ's reasoning because he failed to fully discuss his credibility determination based on the factors provided for in the SSA regulations. 20 C.F.R.§§ 404.1529(c)(3); 416.929(c)(3); SSR-96-7p. Thus, the ALJ failed to explicitly articulate his reasons for finding that Plaintiff's allegations that he experienced panic attacks at least three times per week were unsupported by the record and not credible.

Alternatively, one has to search the body of the ALJ's decision for any reasons he mentions for discounting plaintiff's credibility. The Court finds, however, that even these reasons mentioned by the ALJ for discounting Plaintiff's credibility do not really support the ALJ's finding, supra, as to this issue.

Initially, the Court notes that the ALJ's rationale that Plaintiff lacked credibility, in that, he did not have any panic attacks in his physicians' offices and did not seek emergency room treatment or other treatment care immediately after experiencing an attack cannot prevail. There is no evidence in the record to indicate that an individual suffering from panic attacks would be expected to experience such an attack in his treating physicians' offices. In addition, the fact that Plaintiff did not seek emergency treatment or other immediate treatment after a panic attack is not necessarily indicative of the fact that Plaintiff did not have the number of panic attacks he alleges. Rather, it may simply mean that given the nature of such attacks, in that, a panic attack is a discrete period of

intense fear or discomfort accompanied by physiological symptoms that subside when the episode is over (R. 60.), that there was no need for Plaintiff to seek medical treatment after an attack. *See DSM-IV* at 394-95. In addition, the fact that Plaintiff sought treatment for his panic attacks and his physicians treated him based on the number of panic attacks he reported to them lends credence to Plaintiff's allegations as to the number of panic attacks he was experiencing. *Felisky v. Bowen,* 35 F.3d 1027, 1040-41 (6th Cir. 1994) (credence should be given to claimant's complaints where treating medical professionals accept similar reporting and treated claimant for the symptoms described).[7]

In view of the foregoing, the Court finds that the ALJ failed to adequately follow the mandates of applicable regulatory and case law in assessing Plaintiff's credibility. In sum, as the ALJ has not sufficiently articulated the basis of his decision in a manner that will permit informed judicial review, the Court must remand the cause for further development of the record with respect to Plaintiff's credibility. *See e.g., Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001).

---

[7]The defendant alleges also that the ALJ considered the plaintiff's daily activities in assessing plaintiff's credibility. However, the portion of the record the defendant cites in support thereof (R. 21), does not support defendant's allegation. In that cited part of the body of the ALJ's decision, the ALJ merely factually lists the plaintiff's daily activities without elaboration.

## CONCLUSION[8]

Based on the foregoing, the Court grants Plaintiff's Motion for Summary Judgment insofar as it grants a remand and denies Defendant's Motion for Summary Judgment. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion.

ENTER:

**IAN H. LEVIN**
**U.S. Magistrate Judge**

**Dated:   August 2, 2002**

---

[8]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other arguments raised herein.